**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JUDY SCHEER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    No. 4:25-cv-00256-MTS |
| | ) |
| FRANK J. BISIGNANO, *Commissioner of* | ) |
| *the Social Security Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Commissioner of the Social Security Administration, denying the application of Judy Scheer ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2]  In March and April of 2022, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 and SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (the "Act").  (Tr. 227-36).  Plaintiff alleges disability due to "gastric sleeve and bypass," "[d]ouble mastectomy due to BRCA," depression, bulimia and anorexia, polycythemia vera, malnutrition, enlarged spleen and liver, sleep apnea, ADHD, and arthritis with an alleged onset date of August 9, 2020.  (Tr. 265).  In March 2024, following a hearing, an Administrative Law Judge ("ALJ") issued his decision finding that Plaintiff was not disabled as defined in the Act.  (Tr. 29).  For the following reasons, this Court affirms.

---

[1] Frank J. Bisignano is now the Commissioner of SSA.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Bisignano is substituted as the proper Defendant.

[2] Sections 405(g) and 1383(c)(3) of Title 42 provide for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 29), the Appeals Council denied Plaintiff's request for review,  (Tr. 1); thus, the ALJ's decision stands as the Commissioner's final decision.

-1-

## I.    <u>Standard of Review and Legal Framework</u>

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d); 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by

comparing the RFC with the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.*  If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy.  *Id.* at § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*,

621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.   **The ALJ's Decision**

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability.  (Tr. 16).  At Step 2, the ALJ found Plaintiff had severe impairments of left knee advanced tricompartmental osteoarthritis, degenerative disc disease of the lumbar spine and degenerative disc disease of the cervical spine, asthma, and obesity.  (Tr. 17).  At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 20-21).  Thus, the ALJ found Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with extensive postural, environmental, and physical limitations, but none related to her alleged mental impairments, which the ALJ concluded were mild.  (Tr. 21-27).  At Step 4, the ALJ found Plaintiff could not return to her past relevant work as a medical assistant and a rural postal mail carrier.  (Tr. 27).  At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff can perform, such as medical receptionist.  (Tr. 28-29).  Consequently, the ALJ concluded Plaintiff is not disabled under the Act.  (Tr. 29).

### III.    **Discussion**

Plaintiff challenges the ALJ's conclusion in Step 2 that the medical opinion of Dr. Spencer was unpersuasive with respect to the severity of Plaintiff's mental impairments. According to Plaintiff, the ALJ erred when he determined that Dr. Spencer's findings were unsupported and inconsistent with other information in the record.  Doc. [8] at 5–10.  Those findings concerned Plaintiff's ability to (1) learn, recall, and use information; (2) stay on task; and (3) work with others.  Doc. [8] at 5–10.  The Court does not agree and concludes that the ALJ's findings are supported by substantial evidence on the record as a whole.

For claims filed on or after March 27, 2017, an ALJ must evaluate medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of all of the medical opinions and prior administrative medical findings in a claimant's case record by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(a), (c).  The most important factors for an ALJ to consider are supportability and consistency, and the ALJ must "explain how he considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R.  § 404.1520c(c)(1).   In articulating how he considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2:20-cv-0035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting cases).  Consistency, on the other hand, relates to the medical opinion's congruity with the evidence from other sources in the record.  *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be.").  "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."  *Svendsen v. Kijakazi*, 1:21-cv-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) (citing *Goss v. Kijakazi*, 4:21-cv-0663-LPR-JJV, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, Plaintiff does not assert that the ALJ failed to assess Dr. Spencer's medical opinion as the regulations require.  Nor does she assert that the ALJ did so in an impermissibly conclusory fashion.  *See Osmanovic v. Bisignano*, 4:24-cv-0679-NCC, 2025 WL 2771473, at *3 (E.D. Mo. Sept. 29, 2025) (recognizing that the regulations require "more than a conclusory statement as to the supportability and consistency factors" (quoting *Hirner v. Saul*, 4:21-cv-0038-SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022))).  Instead, Plaintiff argues that

the ALJ was wrong to conclude that certain pieces of information in the record—as well as some of Dr. Spencer's own findings—rendered Dr. Spencer's conclusions unsupported, inconsistent, and therefore unpersuasive.  *See* Doc. [8] at 5–10.  But a review of the ALJ's analysis—as well as the overall record—shows that the ALJ's determination is supported by substantial evidence.

In October 2021, Dr. Spencer opined that Plaintiff demonstrated a "moderate impairment in her ability to learn, recall, and use information and to consistently stay on task . . . [and a] moderate impairment in her ability to relate to and work with other on a consistent basis." (Tr. 1090).  The ALJ found that "[t]he combined mental impairments of post-traumatic stress disorder, attention deficit disorder, and mood disorder [were] not shown to be severe," that Dr. Spencer's opinion concerning the severity of Plaintiff's mental impairments was unsupported by the examination findings and the record as a whole, and engaged in an extensive analysis of Dr. Spencer's examination and other examinations and notes in Plaintiff's record, discussing "the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)."  (Tr. 18-19).

Initially, the ALJ concluded that "a moderate limitation of [Plaintiff's] capacity to stay on task runs contrary" to Dr. Spencer's own notation that Plaintiff completed her activities of daily living and that Plaintiff exhibited "normal judgment and thought content, as well as [being] alert and oriented" at a prior May 12, 2021, examination.  (Tr. 18, 822, 1090).  Plaintiff makes much of the ALJ's conclusion that Dr. Spencer's "exam details no memory deficit"— despite Plaintiff's self-reported "memory impairment" and her failure to "recall three objects after five minutes of distraction" or the "direction in which the sun rises or the capital of Italy"

(Tr. 1089-90)—but substantial evidence nevertheless exists in the record supporting the ALJ's determination that Plaintiff suffered only a mild impairment to learning, recalling, and using information.  Plaintiff displayed a linear and logical thought process in a later examination (Tr. 1144), exhibited average intelligence and mostly intact flow of thought during her examination with Dr. Spencer (Tr. 1090), and presented with a normal "fund of knowledge and memory" while identifying two out of three in a delayed recall test during a March 23, 2022, neurological examination (Tr. 575-76), a notable improvement from Dr. Spencer's examination six months prior.

The ALJ continued, noting that a moderate impairment or restriction concerning Plaintiff's ability to work with others was both unsupported in Dr. Spencer's opinion and "not consistent with a normal mood and behavior when [Plaintiff] was examined on April 5, 2022" or Dr. Spencer's observation that Plaintiff had "a good working knowledge of social norms." (Tr. 18, 801, 1090).  Further, the ALJ reiterated that "mental impairments are among the non-severe impairments in this case [and that] [t]hose impairments, considered singly and in combination, do not cause more than minimal limitation [Plaintiff's] ability to perform basic mental work activities" and analyzed the four "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders."  (Tr. 18).  The ALJ began by stating that Plaintiff had a mild limitation in the area of "understanding, remembering, or applying information," noting that while Plaintiff "testified that she had confusion and concentration difficulties during her hearing . . . Dr. [Spencer] observed when he examined her that she was alert and oriented and that her insight and judgment appeared intact.  He added that her flow of thought was mostly intact and that she appeared of average intelligence" and that she had no language deficit.  (Tr. 18-19).

-8-

In addition, the ALJ concluded that Plaintiff exhibited only a mild limitation when interacting with others, noting that "Dr. [Spencer] stated that [Plaintiff] had a good working knowledge of social norms and no receptive or language deficit," that Plaintiff had "no grooming or hygiene impairments and was cooperative," and that in other examinations Plaintiff exhibited "normal behavior."  (Tr. 19, 1090).  The ALJ similarly concluded that Plaintiff had only a mild limitation in "concentrating, persisting, or maintaining pace," noting that Plaintiff stated that she completed her activities of daily living (Tr. 1089), had "what appeared [to be] intact insight, mostly intact flow of thought, and average intelligence," that she exhibited normal insight and judgment during a May 12, 2023, examination (Tr. 1203), and that Plaintiff's self-reported "confusion and concentration difficulties" were unsupported by her treatment records (Tr. 19).  Lastly, the ALJ noted that Plaintiff had a mild limitation in "adapting or managing oneself," as she completed her activities of daily living, there was no reported impairment to her grooming or hygiene, and she exhibited a normal behavior and mood at an April 5, 2022, examination.  (Tr. 19, 801, 1089-90).  In sum, the ALJ concluded that Plaintiff's mild limitations in each functional area did not evidence more than a minimal limitation in Plaintiff's ability to do basic work activities and thus were non-severe.  (Tr. 19).

At bottom, Plaintiff contends that the ALJ's findings above—and the underlying evidence in the record—neither preclude Dr. Spencer's moderate-limitation findings nor require a conclusion that Plaintiff's limitations are only mild.  *See* Doc. [8] at 6 (memory and recall); *id.* at 8 (staying on task); *id.* at 9 (working with others).  However, Plaintiff's arguments merely establish that "substantial evidence would have supported an opposite decision," and even if true, the Court cannot reverse the ALJ's decision on that basis.  *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  As ever, the Court "may not reverse, even if inconsistent

conclusions may be drawn from the evidence, and even if [the Court] may have reached a different outcome." *McNamara*, 590 F.3d at 610.

Indeed, after considering the evidence in the record as a whole, the Court finds that the ALJ's assessment was within the "available zone of choice" and must therefore be affirmed. *See Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (explaining that the court will not disturb the ALJ's decision when it falls within the "available zone of choice" and finding that substantial evidence supported the ALJ's determination where the ALJ considered claimant's treatment notes, course of treatment, and daily activities); *Hardy v. Dudek*, 4:24-cv-0171-MTS, 2025 WL 917222, at *6 (E.D. Mo. Mar. 26, 2025) ("Even if the ALJ erred in addressing opinion evidence, remand is not required if substantial evidence nonetheless supports the ALJ's decision." (citing *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293 (2d Cir. 2022) (unpublished summary order))).

## CONCLUSION

Therefore, for the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

Dated this 31st day of March 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

-10-